# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

HECTOR RODRIGUEZ,

          Plaintiff,

    v.                                   Case No. 14-C-1034

CAROLYN COLVIN,

          Defendant.

## DECISION AND ORDER

On August 25, 2006, Plaintiff Hector Rodriguez filed an application for disability and disability insurance benefits alleging disability beginning April 17, 2005. His last insured date is March 31, 2010. Plaintiff's application was denied initially and on reconsideration. Following a hearing in March of 2009, an administrative law judge (ALJ) found that Plaintiff's only medically determinable impairment was a visual impairment to one eye, but that it did not render him disabled within the meaning of the Social Security Act. When the Appeals Council denied further review, Plaintiff filed a complaint seeking judicial review, and on September 14, 2011, the case was remanded on stipulation of the parties to reevaluate the severity of Plaintiff's visual impairment. After taking additional evidence, the ALJ again denied Plaintiff's claim in a decision dated April 24, 2014. The Appeals Council again denied further review, making the ALJ's decision the final decision of the Commissioner, and Plaintiff filed this action for judicial review. For the reasons given below, the decision of the Commissioner will be affirmed.

**I. Background**

Plaintiff was 59 years old on April 17, 2005 when a board he was working with kicked back and injured his left eye. (R. 529.) The trauma caused by this accident has left Plaintiff with poor eyesight in his left eye. Due to the injury Plaintiff lacks all depth perception and experiences some double vision. (R. 267.) Subsequent remedial measures have failed to alleviate the problems with his left eye, and his treating physicians do not believe the eyesight can be fixed. (R. 14.) His right eye remained fully functional with 20/20 vision. (R. 319.) Plaintiff also has a number of other health conditions which are controlled by medication: high blood pressure, non-insulin diabetes mellitus, high cholesterol, and asthma. (R. 532, 316.) Other than his eye, none of Plaintiff's medical conditions cause any limitation on his ability to perform basic work activities and were therefore found to be nonsevere impairments in the ALJ's initial decision. (R. 13-14.) Based upon the evidence before him, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform "the full range of work at all exertional levels but the claimant is limited to jobs that can be performed with good vision in only one eye." (R. 14.) The ALJ further concluded based on the testimony of a vocational expert (VE) that although Plaintiff was unable to perform his past work as a welder, truck driver or roofer, he was able to perform numerous other jobs that exist in significant numbers in the national economy. (R. 16.)

As noted above, when this case was last before the court, Plaintiff and Commissioner stipulated to remand the case to give Plaintiff an opportunity to update the record, have the ALJ hold a new hearing and reevaluate the evidence. Case No. 11-C-180, ECF No. 20. More specifically, the Appeals Council noted that the ALJ's original decision gave significant weight to Dr. Roehr's opinion that Plaintiff had no depth perception. Yet, neither the RFC the ALJ determined, nor the

hypothetical question he put to the VE included any limitation in depth perception. Moreover, the positions the VE identified as jobs Plaintiff could perform required at least occasional depth perception. (R. 412.) To address these problems, the Appeals Council directed the ALJ to "obtain evidence from a medical expert to clarify the nature and severity of claimant's visual impairment and limitations . . . ; give further consideration to claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations . . . ; [and] obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . ." (R. 413.)

On remand, Plaintiff underwent a consultative examination by Matthew Nelson, O.D. regarding his vision. Dr. Nelson conducted a vision test on Plaintiff on July 31, 2013, the results of which clearly established that Plaintiff's visual impairment did not meet any of the listings for visual impairments. (R. 319-20.) In a separate questionnaire submitted by Plaintiff's attorney, however, Dr. Nelson checked a series of boxes indicating that Plaintiff could never perform work activities involving depth perception and rarely perform work activities involving accommodation (changing focus) and field of vision. In a space at the bottom of the form questionnaire, Dr. Nelson wrote, "Patient is essentially monocular, thus depth perception is nearly impossible." (R. 521.) In a Medical Source Statement Of Ability To Do Work Related Activities (Physical), Dr. Nelson also indicated Plaintiff would not be able to avoid "ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles." (R. 525.)

The ALJ reasonably rejected these limitations noting that Plaintiff "has very good acuity in his right eye," and his vision problems are essentially limited to his left. (R. 320.) The ALJ also noted that notwithstanding the opinion by Dr. Nelson that Plaintiff had no depth perception and

3

could not avoid hazards in the workplace, "the claimant in every other aspect of his life seems to have vision that allows him to do anything he wants, has good mobility and is able to maneuver within his environment." (R. 320.) The claimant could read, has a driver's license, and can operate a boat. His color perception is not limited nor is his near or far acuity in the dominant right eye. (R. 321.) Finally, the ALJ noted that Dr. Nelson's examination took place eight years after the alleged onset date and three years after his date last insured. (R. 320.) He concluded: "The claimant's ability to maintain a driver's license, drive a motor vehicle, operate a boat to go fishing, perform the above-referenced activities of daily living, completely undercuts his claims that he cannot see well enough, that he cannot focus his vision, or that the visual impairment of his left eye renders him unable to do anything." (R. 322.)

Despite his rejection of at least some aspects of Dr. Nelson's opinion, the ALJ determined that, from his alleged onset date through his date last insured, Plaintiff had an RFC to perform a full range of work at all exertional levels except that he was limited to work that requires only occasional or no depth perception, which in Dictionary of Occupational Titles (D.O.T.) terminology means not present. (R. 317, 373.) When asked to identify any jobs a person with such an RFC and Plaintiff's age, education and work experience could perform, the VE identified more than 30,000 light unskilled jobs and 19,000 medium unskilled jobs in the State of Wisconsin. (R. 375.) Based upon this testimony, the ALJ concluded that Plaintiff was not disabled at any time from the alleged onset date through the date of his decision.

In his action for judicial review of the Commissioner's decision, Plaintiff does not challenge the ALJ's assessment of Dr. Nelson's opinion. Instead, he focuses entirely on the opinions of Thomas J. Leonard, M.D., a second consultative examiner who the State agency took it upon itself

4

to have perform a physical examination of Plaintiff after the case was remanded. (R. 313.) Dr. Leonard examined Plaintiff on August 6, 2013, and compiled a medical report on behalf of the State disability termination services following a single fifty-five minute meeting with the plaintiff. (R. 533, 535.) In the report he prepared of his examination, Dr. Leonard wrote that other than his left eye impairment, the entire physical examination yielded no abnormal findings. In a section entitled "Ability To Perform Work Functions," Dr. Leonard noted that Plaintiff has no limitations in regard to sitting. He reports that he can lift 50 pounds, carry 20 pounds, walk two miles, and stand four to five hours. (R. 532.)

Dr. Leonard also answered a questionnaire regarding Plaintiff's limitations. (R. 536–41.) According to the questionnaire, Plaintiff could frequently lift up to 20 pounds and occasionally lift up to 50 pounds. (R. 536.) Dr. Leonard also recorded that Plaintiff could sit for four consecutive hours, stand for four consecutive hours, and walk for two consecutive hours. (R. 537.) On the same page, Dr. Leonard reported that during an eight hour work day plaintiff could sit for four hours, walk for two hours, but stand for only two hours. (*Id.*) The plaintiff was also limited to occasional balancing. (R. 539.) In a separate questionnaire Dr. Leonard also stated that Plaintiff's limitations are "not related to [Plaintiff's] eye problem." (R. 543.) Dr. Leonard did not draw a connection between Plaintiff's limitations and any other medical condition. It is this questionnaire and the ALJ's assessment of it that forms that basis of Plaintiff's challenge to the Commissioner's decision.

## II. Analysis

### A. Standard of Review

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g).

5

"Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**B. Assessment of Examining Consulting Physician Opinion**

Plaintiff makes a single argument against the ALJ's ruling on appeal. Plaintiff argues that the ALJ erred in rejecting portions of Dr. Leonard's opinion which he construes as limiting him to sedentary work. Because he is a consultative examiner, Plaintiff argues that Dr. Leonard's opinion should have controlled in the absence of compelling evidence to the contrary. His argument is without merit.

6

The ALJ spent little time discussing Dr. Leonard in his opinion, presumably because there was no evidence that Plaintiff had any impairment that would be reasonably expected to produce any exertional limitations. The only medically determinable severe impairment found by the ALJ was the injury to Plaintiff's left eye. (R. 315.) Nothing in the entire medical record suggests that Plaintiff suffered from or was treated for any physical impairment that could cause the exertional limitations Plaintiff argues Dr. Leonard found. Indeed, as the ALJ noted, it was not even clear why the State agency took it upon itself to send Plaintiff to a consultative physical examination when the case was remanded, since the only impairment the Appeals Council directed the ALJ to further evaluate was Plaintiff's visual impairment. (R. 413.) Absent a medically determinable impairment capable of producing the exertional limitations claimed, the ALJ cannot credit any statement concerning its limiting effect. 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). An ALJ can hardly be faulted for failing to assess evidence that does not relate to any impairment asserted by the Plaintiff. Here, the entire medical record and both hearings before the ALJ focused on Plaintiff's visual impairment, and neither Dr. Leonard nor any other doctor suggested that Plaintiff's left eye impairment gave rise to any exertional limitations.

Notwithstanding the absence of medical evidence of any impairment capable of producing exertional limitations, however, the ALJ did discuss and analyze Dr. Leonard's opinion. The ALJ noted that "the only results of an examination that might indicate some physical limitations is the one conducted on August 13, 2013 by Dr. Thomas J. Leonard." (R. 316.) The ALJ noted that Plaintiff was 68 years old at the time of that examination, and yet Dr. Leonard reported he "had no sensory

7

or motor loss on maneuvers, no limitation of movement, grip strength was normal, coordination was normal, no joint swelling with normal reflexes and tone everywhere." (*Id.*) In fact, even at his age at that time, it is far from clear that Dr. Leonard even thought Plaintiff was limited to sedentary work. To support his contention that he is limited to sedentary work, Plaintiff focuses entirely on two entries Dr. Leonard made in questionnaires he was asked to complete and downplays the internal inconsistencies in the reports. Plaintiff cites Dr. Leonard's check on a questionnaire indicating that during an eight hour work day plaintiff could sit for four hours, walk for two hours, and stand for only two hours. Additionally, Plaintiff focuses on his capacity to lift weight, stating without citation that Dr. Leonard "was asked about lifting, and he opined that he [plaintiff] would be limited to frequent lifting of less than 10 pounds and occasional lifting of 10 pounds." (Pl.'s Br. 16, ECF No. 12.) But Plaintiff fails to acknowledge contrary answers by Dr. Leonard in the same questionnaires. For example, although Dr. Leonard reported that Plaintiff could stand for only two hours during an eight hour work day, Dr. Leonard also reported that Plaintiff could stand for four hours continuously. (R. 537.) Clearly this was a mistake because anyone who can stand for four hours continuously necessarily can stand for more than two hours during an eight hour period of time. Likewise, Dr. Leonard's entry on one questionnaire indicating Plaintiff was limited to frequent lifting and carrying of less than 10 pounds and only occasional lifting and carrying of 10 pounds or more (R. 543), contradicts Dr. Leonard's entries on another questionnaire based on the same examination that Plaintiff could frequently lift and carry up to 20 pounds and occasionally lift and carry up to 50 pounds. (R. 536.) The latter statements are entirely consistent with what Plaintiff reported to Dr. Leonard: that he could lift 50 pounds, walk two miles, and stand four to five hours at a time. Though the ALJ inaccurately explained Dr. Leonard's mistake regarding standing time, he was correct in

8

noting it. Given the inconsistencies and contradictory answers on the questionnaires completed by Dr. Leonard, together with the absence of any medical evidence of an impairment capable of causing any significant exertional limitations, the ALJ did not err in giving his opinion little weight.

Plaintiff also argues that the ALJ improperly used Plaintiff's testimony at the hearing to evaluate Dr. Leonard's testimony. (Reply Br., ECF No. 18 at 4.) Again without citation to the record, Plaintiff states that the ALJ pointed to his statements at the hearing that he had "good mobility" but failed to explain why that was inconsistent with a limitation to sedentary work. (*Id.*) Plaintiff's argument is difficult to follow. The ALJ did note that Plaintiff testified at the December 4, 2013 hearing that he had no problem using his hands and that he could stand six out of eight hours. (R. 321, (citing Pl.'s testimony at R. 360.)) Such testimony belies any suggestion by Dr. Leonard that Plaintiff could only stand for two hours in an eight hour day, and there is nothing improper about the ALJ pointing it out.

Plaintiff also objects that the ALJ failed to explain how his daily activities are inconsistent with his alleged limitations. But the ALJ primarily considered Plaintiff's daily activities as evidence that his visual impairment was not as severe as Plaintiff claims, a conclusion Plaintiff does not challenge. Still, there was nothing in the daily activities Plaintiff described that would suggest the physical limitations he now claims. For example, the ALJ cites the fact that Plaintiff reported to Dr. Leonard and Dr. Nelson that "he can read ordinary newspaper print, drive his own motor vehicle, watch TV, use a computer and read a screen for up to 20 minutes, prepare simple meals, clean up the dishes, does the vacuuming, does the laundry, travel without a companion, care for his personal hygiene, and go fishing on his boat." (R. 321.) Additionally, Plaintiff testified that he "had no problems using his hands and could stand for 6 hours out of 8." (*Id.*) This evidence, considered with the actual findings

9

set forth in Dr. Leonard's report, provide substantial evidence that Plaintiff did not have any physical limitations that prevented him from performing work at all exertional levels.

Plaintiff also argues that if the ALJ believed that Dr. Leonard had no medical basis on which to impose exertional limitations, he should have contacted him and asked for his basis. But there was no need to contact Dr. Leonard. There was no basis in the medical record to support Plaintiff's contention that he was limited to sedentary work and a careful reading of Dr. Leonard's report provides no support for such a conclusion either.

Finally, Plaintiff attempts to supplement the record with materials outside the record in order to provide an ex-post medical justification for the limitations. To prove disability Plaintiff needed to show that any physical limitations are the result of a medically determinable impairment, not just due to age or physique. "It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms." SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). An outside showing of medical impairment is critical to Plaintiff's case because Dr. Nelson does not provide any information related to physical limitations and Dr. Leonard specifically states that the only impairment (his left eye injury) is not the cause of the physical limitations he reported. In order to prove a physical impairment, Plaintiff raises on appeal the prospect that he had an actively detached retina. He then appeals to a treatise which notes that a claimant with an actively detached retina "should not receive an RFC for over sedentary work." (Pl.'s Br. 21, ECF. No. 12.) If Plaintiff wished to show that he had been suffering from an actively detached retina for the past ten years or that a history of retinal detachment precluded the Plaintiff from performing certain levels of work, it was his responsibility to establish such facts prior to this appeal. The treatise Plaintiff cites specifically notes regarding retinal detachments, "medical

judgment must be applied on a case-by-case basis." (*Id.*) Plaintiff's line of argument relies on materials outside of the record and directly contradicts the findings of Dr. Leonard himself, who wrote that the physical limitations of the Plaintiff are not related to any injury to his eye.

The ALJ gave a logical and consistent account of why he reached the determination that the Plaintiff is not entitled to disability. The ALJ noted the internal inconsistencies within the medical reports and gave acceptable weight to all of the evidence. The ALJ did not fully discount any medical opinion, but diligently analyzed all available facts searching for evidence of Plaintiff's impairments and attending limitations. The ALJ, acting in accordance with law and regulation, had substantial evidence for a finding that Plaintiff had not been under a disability within the meaning of the Social Security Act.

## III. CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** this 26th day of August, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

11